## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TROY FLEMING, JARROD NABOR, DAVARIAN URSIN, CHARLES ZIEGELER, and RONNIE MILLET**, on behalf of themselves and all others similarly situated,<br><br>**Plaintiffs,**<br><br>v.<br><br>**BAYOU STEEL BD HOLDINGS II, L.L.C.** and **BLACK DIAMOND CAPITAL MANAGEMENT, LLC,**<br><br>**Defendants.** | **CIVIL CASE NO. 20-_____**<br><br>**SECTION: __**<br><br>**DIVISION: __**<br><br>**NATIONWIDE CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT FOR VIOLATION OF WARN ACT

Plaintiffs, Troy Fleming, Jarrod Nabor, Davarian Ursin, Charles Ziegeler, and Ronnie Millet ("Plaintiffs"), on behalf of themselves and a putative class of similarly situated former employees of Bayou Steel BD Holdings, L.L.C. *dba* Bayou Steel Group *fka* BD Long Products, LLC ("BD Holdings"), BD Bayou Steel Investment, LLC ("BD Investment"), BD LaPlace, LLC *fka* Arcelormittal LaPlace, LLC ("BD LaPlace" and, collectively with BD Holdings and BD Investment, "Bayou Steel Entities"), Bayou Steel BD Holdings II, L.L.C. ("Bayou Steel Parent"), and Black Diamond Capital Management, LLC ("Black Diamond" and, collectively with Bayou Steel Parent, "Defendants"), hereby file this Class Action Complaint against Defendants, Bayou Steel Parent and Black Diamond, upon personal knowledge as to those matters within their knowledge, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.    This is a class action proceeding against Defendants for violation of the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 *et seq.* (the "WARN Act"),

1

seeking the recovery by Plaintiffs and other similarly situated former employees of Bayou Steel Entities and Defendants (the "Class Members") of damages in the amount of sixty (60) days' back pay and ERISA benefits, pursuant to 29 U.S.C. § 2104(a) plus attorney's fees, costs, interest and other statutory remedies.

2.      On or about September 30, 2019, Plaintiffs learned that they were to be terminated immediately, or had already been terminated, without cause, as part of, or as the foreseeable result of, a mass layoff or facility closing ordered by Bayou Steel Entities and Defendants.  Such termination violated the notice requirements of the WARN Act because Defendants failed to give Plaintiffs and Class Members at least sixty (60) days' advance written notice of termination.

3.      The Bayou Steel Entities owned and jointly operated five facilities employed in the production of various finished and semi-finished steel products including I-beams, angle iron and steel flats.  Plaintiffs believe Bayou Steel Parent's sole function is to hold the limited liability company membership interests of the Bayou Steel Entities.

4.      Black Diamond is the control person of the Bayou Steel Entities and Bayou Steel Parent.  Evidence of Black Diamond's control includes:

- The senior officers of each of the Bayou Steel Entities is under contract with Black Diamond.  Those senior officers do not have contracts with the Bayou Steel Entities or Bayou Steel Parent.

- Black Diamond owns, directly or indirectly, all outstanding membership interest of the Bayou Steel Entities and Bayou Steel Parent.

- Black Diamond has the power to, and, in fact, has named the directors of the Bayou Steel Entities and Bayou Steel Parent.  A number of directors are managing directors of Black Diamond.

1529628v.2

- All working capital of the Bayou Steel Entities and Bayou Steel Parent is provided by Black Diamond or another of its affiliates in the form of secured "loans."

- The Bayou Steel Entities were forced to file for Chapter 11 relief and terminate all of their employees because Black Diamond refused to provide additional working capital to the Bayou Steel Entities.

- Black Diamond management decided to terminate Plaintiffs and other Class Members without providing the notice required by the WARN Act and to cause the Bayou Steel Entities to file for relief under Chapter 11.

5.     The Bayou Steel Entities and Defendants have never delivered directly to any of the Plaintiffs nor, to Plaintiffs' knowledge, any Class Members, any writing announcing that Plaintiffs' employment and that of other Class Members has been terminated.  Rather, on September 30, 2019, supervisory personnel at the Bayou Steel Entities' and Bayou Steel Parent's principal place of business and largest production facility, both of which are located in LaPlace, Louisiana, announced in group meetings or by text message that all steel production had ceased and that all hourly employees had been terminated effective immediately.  Similar announcements were made on September 30, 2019 or the days that followed at the Bayou Steel Entities' and Defendants' facilities in Tennessee, Oklahoma, Illinois and Pennsylvania.

6.     Following the oral and text announcements on September 30, 2019, the Bayou Steel Entities and Defendants issued a written notice of termination to a representative of the union representing most of the Bayou Steel Entities' hourly employees.

7.     Each of the Bayou Steel Entities and the Defendants is an "Employer" of the Plaintiffs and other Class Members within the meaning of the WARN Act, and, both of the

3

Defendants have breached their statutory obligations owed as an Employer to Plaintiffs and the Class Members by failing to provide any prior notice of a mass layoff and closing of facilities.

8.      Plaintiffs and other similarly situated employees of the Bayou Steel Entities and Defendants seek their statutory remedies in light of Defendants' violation of the WARN Act.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 because this case arises under federal law.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and/or omissions giving rise to the claims occurred the Eastern District of Louisiana.

## THE PARTIES

### Plaintiffs

11.     Plaintiff Troy Fleming is a citizen of the State of Louisiana, residing in St. John the Baptist Parish.  Mr. Fleming was employed by the Bayou Steel Entities and Defendants and worked at the Bayou Steel Louisiana executive offices and production facilities operated by Defendants and located at 138 Highway 3217, LaPlace, Louisiana 70068 (the "Louisiana Facility").  Prior to his termination, Mr. Fleming worked at the Louisiana Facility for nearly thirteen (13) years, since November of 2006, and held positions as a P2 Operator, a P4 Operator, a P5 Operator, and a P6 Operator.  Mr. Fleming was informed that his employment with the Bayou Steel Entities and Defendants had been terminated, effective immediately, on September 30, 2019, by text message.  Mr. Fleming did not receive other written notice of termination.  At the time of his termination, Mr. Fleming held the position of P2 Operator, a position he had held for four (4) years.

12.     Plaintiff Jarrod Nabor, a citizen of the State of Louisiana residing in St. Charles Parish, was employed by the Bayou Steel Entities and Defendants and worked at the Bayou Steel Louisiana Facility.  Prior to his termination, Mr. Nabor worked at the Louisiana Facility for nearly fifteen (15) years, since January of 2005, and held positions as a P2 Operator, a P3 Operator, a P5 Operator, a P6 Operator, and a P7 Operator.  Mr. Nabor was informed that he his employment with the Bayou Steel Entities and Defendants had been terminated, effective immediately, on September 30, 2019, by text message from a co-worker.  Mr. Nabor did not receive written notice of termination from the Bayou Steel Entities or Defendants or anyone acting on behalf of the Bayou Steel Entities or Defendants.  At the time of his termination, Mr. Nabor held the position of P2 Operator, a position he had held for over five (5) years.

13.     Plaintiff Davarian Ursin, a citizen of the State of Louisiana, was employed by the Bayou Steel Entities and Defendants and, prior to his termination, worked at the Bayou Steel Louisiana Facility for more than six (6) years, since July of 2013, in the position of P4 Operator. Mr. Ursin was notified verbally of his termination on the morning of September 30, 2019, when his supervisor called Mr. Ursin and other employees to the safety meeting room, and their department manager stated that Bayou Steel would be closing and that employees were to clean out their lockers and exit the premises immediately.  Mr. Ursin did not receive any written notice of termination.

14.     Plaintiff Charles Ziegeler is a citizen of the State of Louisiana residing in Ascension Parish.  Mr. Ziegeler was employed by the Bayou Steel Entities and Defendants and worked at the Bayou Steel Louisiana Facility for over thirty (30) years until his termination.  Mr. Ziegeler did not receive written notice of his termination and was orally informed of his termination from other

employees on or about September 30, 2019.  At the time of his termination, Mr. Ziegeler was a Facility Manager.

15.     Plaintiff Ronnie Millet is a citizen of the State of Louisiana residing in St. John the Baptist Parish, and a former employee of the Bayou Steel Entities and Defendants.  Prior to his termination, Mr. Millet worked at the Bayou Steel Louisiana Facility for nearly forty (40) years, since 1981, and held positions as a P1 Operator, a P2 Operator, and a Casting Department Supervisor.  Mr. Millet was on medical leave at the time of the Louisiana Facility closure and learned of his termination by word of mouth from other employees on September 30, 2019.  Mr. Millet did not receive written notice of termination.  At the time of his termination, Mr. Millet was a Casting Department Supervisor.

## The Bayou Steel Entities

16.     Debtor Bayou Steel BD Holdings, L.L.C. *dba* Bayou Steel Group *fka* BD Long Products, LLC ("BD Holdings") is a Delaware limited liability company with its principal place of business located at 138 Highway 3217, LaPlace, Louisiana 70068.

17.     Debtor BD Bayou Steel Investment, LLC ("BD Investment") is a Delaware limited liability company with its principal place of business located at 138 Highway 3217, LaPlace, Louisiana 70068.

18.     Debtor BD LaPlace, LLC *fka* Arcelormittal LaPlace, LLC ("BD LaPlace") is a Delaware limited liability company with its principal place of business located at 138 Highway 3217, LaPlace, Louisiana 70068.

19.     Bayou Steel BD Holdings, L.L.C., BD Bayou Steel Investment, LLC, and BD LaPlace, LLC have at all times shared the same board of directors consisting of the same individual members.  Upon information and belief, the three Bayou Steel Entities operate as a single entity

with common office, officers, facilities and operations.  As described by Alton Davis, President and Chief Operating Officer of the three Bayou Steel Entities: "I think of them all one in the same. Or I don't know what the difference between the three would be, if there is a difference."[1]

20.     On September 30, 2019, Bayou Steel BD Holdings, L.L.C., BD Bayou Steel Investment, LLC, and BD LaPlace, LLC each filed a Voluntary Petition for Relief under Chapter 11 of Title 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.

## Defendants

21.     Defendant Bayou Steel BD Holdings II, L.L.C. ("Bayou Steel Parent") is a Delaware limited liability company with its principal place of business located at 138 Highway 3217, LaPlace, Louisiana 70068.

22.     Bayou Steel Parent owns all of the issued and outstanding membership interest of each of BD Holdings, BD Investment, and BD LaPlace.

23.     Black Diamond Capital Management, LLC ("Black Diamond") is a Delaware limited liability company with its principal place of business at One Sound Shore Drive, Greenwich, Connecticut 06830.

24.     Black Diamond owns all of the issued and outstanding membership interest in Bayou Steel Parent, and through Bayou Steel Parent owns all of the membership interest in each of the Bayou Steel affiliates, BD Holdings, BD Bayou Steel Investment, and BD LaPlace.

## FACTUAL BACKGROUND

## Relationship between the Bayou Steel Entities and Defendants

---

[1] Deposition of Alton Davis conducted on October 29, 2019 at p. 17.

1529628v.2

25.     In 2015, Black Diamond engaged Alton Davis to conduct due diligence in connection with Black Diamond's contemplated acquisition of the Louisiana Facility and certain related assets and facilities.  Black Diamond had previously owned and operated the Louisiana Facility and sold the property in 2008.

26.     Black Diamond acquired the Bayou Steel facilities in 2016.  Financing for the acquisition was provided in part by Black Diamond's affiliate, Black Diamond Commercial Finance, LLC ("Black Diamond Finance").

27.     Upon information and belief, Black Diamond failed to invest any working capital into the Bayou Steel Entities.  Instead, it caused Black Diamond Finance to provide certain "loans" purportedly secured by liens on land, buildings, equipment, accounts receivable and inventory owned by the Bayou Steel Entities.

28.     The Bayou Steel Entities' ability to purchase inventory and conduct operations was dependent on the provision of these operating "loans" from Black Diamond Finance.

29.     Black Diamond established Bayou Steel Parent to hold the membership interests of BD Holdings, BD Investment, and BD LaPlace.

30.     Black Diamond had the right to name all members of the board of directors of the Bayou Steel Entities and Bayou Steel Parent, and, in fact, at all relevant times, Black Diamond named all board members.  At least three of the board members of the Bayou Steel Entities and Bayou Steel Parent were managing directors of Black Diamond.

31.     Black Diamond both named all members of the boards and also the senior management of each of the Bayou Steel Entities and Bayou Steel Parent.

32.     At all relevant times, Alton Davis served as the Chief Operating Officer and President of the Bayou Steel Entities and Bayou Steel Parent.

8

1529628v.2

33.     Alton Davis' employment contract as Chief Operating Officer and President for the Bayou Steel Entities and Bayou Steel Parent is now, and has always been with Black Diamond.

34.     Upon information and belief, although Mr. Davis serves as Chief Operating Officer and President of the Bayou Steel Entities and Bayou Steel Parent, none of those entities are signatories to Mr. Davis' employment contract; Black Diamond and Mr. Davis are the only parties to the agreement.

35.     Black Diamond, through Alton Davis, participated in contract negotiations with the Steelworkers Union including negotiations which occurred following the expiration of the prior contract on September 1, 2019.

36.     The Bayou Steel Entities' and Bayou Steel Parent's employment policies are set through the contract between the Bayou Steel entities and the Steelworkers Union.

37.     Through its involvement in the contract negotiations, Black Diamond participated in creating the employment policies for the Bayou Steel entities and controlled and set terms and conditions of employment and compensation for all employees of the Bayou Steel entities.  Black Diamond further set terms and conditions of employment and compensation through its control of the Board and the senior officers of the Bayou Steel Entities and Bayou Steel Parent.

38.     Mr. Kirkland served as the Vice President of the Bayou Steel Entities and Bayou Steel Parent.

39.     Upon information and belief, Mr. Kirkland was selected by Black Diamond.  He does not have an employment contract, but reported to Mr. Davis and other persons who are employed by Black Diamond.

40.     Black Diamond also selected Mike Williams to serve as the Chief Executive Officer of the three Bayou Steel Entities and Bayou Steel Parent.  Mr. Williams' employment contract,

9

like that of Mr. Davis, was with Black Diamond and neither the Bayou Steel Entities nor Bayou Steel Parent are parties to Mr. Williams' employment contract.

41.     Mr. Davis has testified that the three Bayou Steel Entities shared executive offices and production facilities.  The employees of one Debtor served the other Bayou Steel Entities, and those entities had the same offices.  All three entities were managed by the same group of employees located at the Bayou Steel Entities' and Bayou Steel Parent's joint headquarters at the Louisiana Facility.  Mr. Davis, the President and Chief Operating Officer of all three Bayou Steel Entities "think[s] of them all one in the same" and does not "know what the difference between the three would be, if there is a difference."

42.     At all relevant times, Black Diamond has been the control person of the Bayou Steel Entities and Bayou Steel Parent, and those entities are the alter ego of Black Diamond.

43.     As of September 30, 2019, the Bayou Steel Entities and Defendants jointly owned and/or operated facilities in four locations:  LaPlace, Louisiana (the "Louisiana Facility"); Harriman, Tennessee (the "Tennessee Facility"); Leetsdale, Pennsylvania (the "Pennsylvania Facility"); and Catoosa, Oklahoma (the "Oklahoma Facility" and, collectively, the "Facilities").

44.     The Bayou Steel Entities and Defendants also jointly owned and/or operated distribution depots in three locations:  Tulsa, Oklahoma; Chicago, Illinois; and Pittsburgh, Pennsylvania (the "Distribution Depots").

**<u>Termination of the Employees</u>**

45.     The Bayou Steel Entities and Defendants jointly employed approximately 462 employees across the Facilities and Distribution Depots. As of September 30, 2019, the Bayou Steel Entities and Defendants employed approximately 376 employees at the Louisiana Facility and 72 employees at the Tennessee Facility.

1529628v.2

46.     As of October 1, 2019, the Bayou Steel Entities and Defendants employed only 161 employees across all of the Facilities and Distribution Depots.   The number of employees continued to decline after October 1, 2019.

47.     As early as July of 2019, the Louisiana Facility began to experience a decline in inventory of scrap materials which are the principal raw materials for production of shaped steel at the Louisiana Facility.

48.     The Bayou Steel Entities' difficulty in obtaining materials to operate the Louisiana Facility arose because Black Diamond was unwilling to provide additional operating funds.

49.     The inventory of raw materials at the Louisiana Facility continued to decline throughout August and September, 2019.  Upon information and belief, this decline reflected the fact that Black Diamond had decided to place the Bayou Steel Entities in Chapter 11.

50.     Several weeks prior to the closing of the Louisiana Facility, members of the senior Black Diamond management team, including Stephen Deckhoff, founder and managing principal of Black Diamond, visited the Louisiana Facility and conducted closed door meetings with Alton Davis.

51.     Following these meetings, Stephen Deckhoff and the Black Diamond management team toured the Louisiana Facility.

52.     The purpose of the visit by Stephen Deckhoff and the Black Diamond management team was to finalize the plans for closing of the Louisiana Facility, including terminating the Plaintiffs and Class Members with no prior notice whatsoever.  Apparently, Black Diamond failed to inform senior management of the Bayou Steel Entities (including the officers under contract to Black Diamond) of its decision to close the Facility, terminate the Class Members and file for Chapter 11 until September 30, 2019.

11

1529628v.2

53.     Prior to termination, Plaintiffs and other similarly situated individuals were fulltime employees of the Bayou Steel Entities and Defendants and worked at their Facilities.

54.     On or around September 30, 2019, Plaintiffs and Class Members learned, either directly through verbal or electronic communications with management and/or colleagues, or indirectly from other Class Members, that the Bayou Steel Entities' and Defendants' Facilities would be closing.

55.     On or around September 30, 2019, Plaintiffs and Class Members learned that they had been or would be terminated as a consequence of the imminent closure of Defendants' Facilities.

56.     On or around September 30, 2019, at least 304 Plaintiffs and Class Members learned, either directly through verbal or electronic communications with management and/or colleagues, or indirectly through word of mouth, that they were terminated, effective immediately, as a consequence of the imminent closure of Defendants' Facilities.  Other Class Members were terminated after September 30, 2019.

57.     As of the filing of this Complaint, Plaintiffs and Class Members have not received written notice of termination.

58.     Written notice of the Louisiana Facility closure and employee termination was provided to Ashton Pierre, President of United Steelworkers Local 9121, at some point during the sixty-day period commencing on September 30, 2019.

### Black Diamond is the Control Person of the Bayou Steel Entities

59.     Black Diamond should be deemed the Employer of the Plaintiffs and Class Members because, without limitation it is (i) the control person of the Bayou Steel Entities and

1529628v.2

Bayou Steel Parent and (ii) the operations of the Bayou Steel Entities and Bayou Steel Parent are dependent upon Black Diamond.

60. That Black Diamond exercised complete dominion and control of the Bayou Steel Entities and Bayou Steel Parent is evidenced by:

(i) Black Diamond has the authority to name, and, in fact, has named the members of the Board of Directors of each of the Bayou Steel Entities.  Half of the members of each Board are managing directors of Black Diamond.

(ii) The employment contracts of senior officers of the Bayou Steel Entities and Bayou Steel Parent are with Black Diamond.  Neither the Bayou Steel Entities nor Bayou Steel Parent are signatories to the employment contracts.

(iii) Black Diamond controls decision making of the officers and senior managers of the Bayou Steel Entities.  Indeed, Black Diamond made the decision to close the facilities, conduct a mass layoff, and cause the Bayou Steel Entities to file for Chapter 11 relief.

(iv) Black Diamond controls the employment policies of the Bayou Steel Entities because it participated in negotiation of and approved the union contracts and because it directs the senior officers and board members of the Debtor.

(v) The Bayou Steel Entities were never provided with working capital remotely adequate to support their operations.  Instead, Black Diamond, acting through Black Diamond Finance, provided "secured loans" to the Bayou Steel Entities.

61.     Bayou Steel Entities and Bayou Steel Parent operated as divisions or departments of Black Diamond.

## FEDERAL WARN ACT CLASS ALLEGATIONS

62.     Pursuant to 29 U.S.C. § 2104(a)(5), Fed. R. Bankr. P. 7023, and Fed. R. Civ. P. 23(a) and (b)(3), Plaintiffs bring this adversary proceeding for relief against Defendants for violation of the WARN Act, 29 U.S.C. § 2101 *et seq*., on their own behalf and on behalf of all other persons similarly situated, as representatives of the following class (the "Class"):

63.     All former fulltime employees of the Bayou Steel Entities and Defendants, who worked at, received assignments from, or reported to the Bayou Steel Entities' and Defendants' Facilities and who:

   a.   were terminated without cause beginning on or about September 30, 2019, and within 30 days of that date; or

   b.   were terminated without cause as the reasonably foreseeable consequence of the mass layoffs and/or facility closings ordered by Defendants on or about September 30, 2019; and

   c.   are affected employees, as that term is defined by the WARN Act in 29 U.S.C. § 2101(a)(5).

64.     Plaintiffs reserve the right to amend the definition of the Class and/or add subclasses to include or exclude members.

65.     As described below, this action satisfies the numerosity, commonality, typicality, superiority, predominance, and adequacy of representation requirements of Bankruptcy Rule 7023, Fed. R. Civ. P. 23.

## Numerosity

66.     The persons in the Class are so numerous that joinder of all members is impracticable.  In the interest of judicial economy, this dispute should be resolved through class action.

67.     Defendants employed more than 100 fulltime employees who worked at, received assignments from, or reported to the Defendants at its headquarters at the Louisiana Facility.

68.     Defendants employed more than 400 fulltime employees who worked at, received assignments from, or reported to the Defendants' headquarters at the Louisiana Facility or were based at one of Defendants' other Facilities, including but not limited to the Tennessee Facility.

69.     Although the precise number of such persons is unknown, the number, identity, and location of Class Members are ascertainable through appropriate discovery and may be identified by the books and records maintained and possessed by Defendants.

70.     The rate of pay and benefits that were being paid to each Class Member by the Bayou Steel Entities and Defendants at the time of his/her termination is contained in the books and records of Defendants and is ascertainable through appropriate discovery.

**Commonality**

71.     There are common questions of law and fact affecting the entirety of the Class. Specifically, common questions include without limitation:

a.  whether the members of the Class were fulltime employees of the Bayou Steel Entities and Defendants who worked at, received assignments from, or reported to the Bayou Steel Entities' and Defendants' Facilities;

b.  whether the Defendants unlawfully terminated the employment of the members of the Class by terminating them without cause and without providing written notice sixty (60) days in advance of the date of termination in violation of the WARN Act;

c.  whether Defendants unlawfully failed to pay the Class Members sixty (60) days' wages and benefits as required by the WARN Act; and

d.  whether both of the Defendants are an employer of Class Members.

72.     Answers to these common questions will drive the resolution of the claims shared by each member of the Class.

1529628v.2

**Typicality**

73.     Plaintiffs' claims are representative of those of all members of the Class. Specifically, Plaintiffs worked at, received assignments from, or reported to the Bayou Steel Entities and Defendants at its headquarters at the Louisiana Facility and were terminated beginning on or about September 30, 2019, due to the mass layoff and/or facility closing ordered by Defendants.

**Predominance and Superiority**

74.     Class certification of these claims is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual Class Members.  These common questions include, but are not limited to:

      a.  whether the members of the Class were fulltime employees of the Bayou Steel Entities and Defendants who worked at, received assignments from, or reported to the Bayou Steel Entities' and Defendants' Facilities;

      b.  whether both of the Defendants were an employer within the scope of the WARN Act;

      c.  whether Defendants unlawfully terminated the employment of the members of the Class by terminating them without cause and without providing written notice sixty (60) days in advance in violation of the WARN Act; and

      d.  whether Defendants unlawfully failed to pay the Class Members sixty (60) days' wages and benefits as required by the WARN Act.

75.     This action should be maintained as a class action because the prosecution of separate, and largely duplicative actions by individual members of the Class would create a risk of inconsistent or varying adjudications, with respect to individual members.

76.     A class action is particularly valuable in the context of WARN Act litigation, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal

16

court against corporate Defendants, and damages suffered by individual Class Members are small compared to the expense and burden of individually prosecuting their claims.

77.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy as it will conserve judicial resources and the resources of the parties and is likely to present significantly fewer difficulties than those presented in individual claims and adjudications.  The identities of the Class Members may be obtained from Defendants' records.  Plaintiffs intend to send notice to all members of the Class to the extent required by Rule 23.

## **Adequacy of Representation**

78.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiffs' interests are squarely aligned with those of individual members of the Class.   On or about September 30, 2019, Plaintiffs were notified of termination and subsequently terminated by the Bayou Steel Entities and Defendants as part of a mass layoff or facility closing, as those terms are defined in 29 U.S.C. § 2101(a)(2) and (3).  They were entitled to receive written notice under the WARN Act sixty (60) days in advance of termination and were not provided that notice.

79.     Plaintiffs have retained counsel competent and experienced in complex class action lawsuits, bankruptcy law and procedure, and employment litigation, including under the WARN Act.  Counsel for Plaintiffs are well-versed in class action proceedings asserting claims under the WARN Act.

1529628v.2

## CLAIMS FOR RELIEF

## Count I: Violation of the Federal WARN Act

80.   Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

81.   At all relevant times, the Defendants employed more than 100 fulltime employees at its headquarters at the Louisiana Facility, who in the aggregate worked at least 4,000 hours per week, exclusive of hours of overtime, within the United States.

82.   At all relevant times, the Defendants employed more than 400 fulltime employees, who worked at, received assignments from, or reported to the Louisiana Facility or one of Bayou Steel Entities' and Defendants' other Facilities, including but not limited to the Tennessee Facility.

83.   At all relevant times, the Defendants were "employers" of the Class Members, as that term is defined in 29 U.S.C. § 2101 (a)(1) and 20 C.F.R. § 639(a)(3), and continued to operate as a business until they decided to order a mass layoff and/or facility closing at the Facilities.

84.   Beginning on or about September 30, 2019, the Defendants ordered a mass layoff and/or facility closing at the Facilities, as those terms are defined by 29 U.S.C. § 210l(a)(2) and 20 C.F.R. § 639.3(i).

85.   The mass layoff and/or facility closing at the Facilities resulted in "employment loss" as that term is defined by 29 U.S.C. § 2101(a)(2) for at least fifty (50) of the Defendants' fulltime employees as well as at least thirty-three percent (33%) of the Defendants' workforce at its Facilities, excluding "part-time employees" as defined by 29 U.S.C. § 2101(a)(8).

86.   Plaintiffs and Class Members were terminated by the Defendants without cause on their part, as part of or as the reasonably foreseeable consequence of the mass layoff and/or facility closing ordered by the Defendants at the Facilities.

1529628v.2

87.     Plaintiffs and Class Members are "affected employees" of the Defendants, within the meaning of 29 U.S.C. § 2101(a)(5).

88.     The Defendants were required by the WARN Act to give Plaintiffs and Class Members, at least sixty (60) days' advance written notice of their terminations; and, alternatively, as to Plaintiffs and Class Members represented by a union, the Defendants were required by the WARN Act to give Plaintiffs' and Class Members' respective unions at least sixty (60) days' advance written notice of Plaintiffs' and Class Members' terminations.  The Defendants did not comply with either requirement.

89.     The Defendants failed to give Plaintiffs and Class Members written notice that complied with the requirements of the WARN Act; and, alternatively, as to Plaintiffs and Class Members represented by a union, the Defendants failed to give Plaintiffs' and Class Members' respective unions written notice that complied with the requirements of the WARN Act.

90.     Plaintiffs and each of the Class Members are "aggrieved employees" of the Defendants as that term is defined in 29 U.S.C. § 2104(a)(7).

91.     The Defendants failed to pay Plaintiffs and each of the Class Members their respective wages, salary, commissions, bonuses, accrued vacation and personal time off for sixty (60) days following their respective terminations.

**JURY DEMAND**

92.     Plaintiffs demand a trial by jury.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of all other similarly situated persons, pray for the following relief as against Defendants:

a.   Certification of this action as a class action;

19

b.  Designation of Plaintiffs as Class Representatives;

c.  Appointment of undersigned counsel as Class Counsel;

d.  An award of damages for each member of the Class, equal to the sum of: unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay pension and 401(k) contributions and other ERISA benefits, for 60 days, that would have been covered and paid under the then applicable employee benefit plans had that coverage continued for that period, all determined in accordance with the WARN Act, 29 U.S.C. § 2104(a)(1)(A);

e.  Reasonable attorney's fees and costs and disbursements that Plaintiffs will incur in prosecuting this action, as authorized by the WARN Act;

f.  Interest as allowed by law on all amounts owed pursuant to the previous paragraphs;

g.  Other such relief as the Court deems just and proper.

Dated: May 19, 2020                 Respectfully submitted,

By:     */s/ Brent Barriere*
        Brent B. Barriere (La. Bar No. 2848)
        Jason W. Burge (La. Bar No. 30420)
        Kathryn J. Johnson (La. Bar No. 36513)
        FISHMAN HAYGOOD, L.L.P.
        201 St. Charles Avenue, Suite 4600
        New Orleans, Louisiana 70170
        Telephone: (504) 586-5252
        Facsimile: (504) 586-2520
        bbarriere@fishmanhaygood.com
        jburge@fishmanhaygood.com
        kjohnson@fishmanhaygood.com

1529628v.2

Joseph C. Peiffer (La. Bar No. 26459)
Brandon M. Wise (Mo. Bar No. 67242)
PEIFFER WOLF CARR & KANE, APLC
818 Lafayette Ave., Floor 2
St. Louis, Missouri 63104
Telephone: (314) 833-4825
Facsimile: (314) 833-4826
jpeiffer@pwcklegal.com
bwise@pwcklegal.com

Eric J. O'Bell (La. Bar No. 26693)
Bradley T. Oster (La. Bar No. 35540)
O'BELL LAW FIRM, LLC
3500 North Hullen Street
Metairie, Louisiana 70002
Telephone: (504) 456-8677
Facsimile: (504) 456-8653
ejo@obelllawfirm.com
brad@obelllawfirm.com

Hugh P. Lambert, T.A. (La. Bar No. 7933)
Cayce C. Peterson, Esq. (La. Bar No. 32217)
THE LAMBERT FIRM, PLC
701 Magazine Street
New Orleans, Louisiana 70130
Telephone: (504) 581-1750
Facsimile: (504) 529-2931
hlambert@thelambertfirm.com
cpeterson@thelambertfirm.com

Randal L. Gaines, Esq. (La. Bar No. 17576)
7 Turnberry Drive
LaPlace, Louisiana 70068
Telephone: (225) 647-3383
Facsimile: (985) 652-3299
attyrandal@gmail.com

1529628v.2

Kevin J. Mangan, pro hac pending
Nicholas T. Verna, pro hac pending
WOMBLE BOND DICKINSON (US) LLP
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (312) 252-4320
Facsimile: (312) 252-4330
kevin.mangan@wbd-us.com
nick.verna@wbd-us.com

*Attorneys for Plaintiffs and Class Members*