UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TROY FLEMING, ET AL. | CIVIL ACTION |
| VERSUS | NO: 20-1476 |
| BAYOU STEEL BD HOLDINGS II LLC, ET AL. | SECTION: "J"(4) |

## ORDER & REASONS

Before the Court are a *Motion for Summary Judgment* **(Rec. Doc. 8)** filed by Bayou Steel BD Holdings II LLC and Black Diamond Capital Management LLC (collectively "Defendants"); an opposition (Rec. Doc. 31) filed thereto by Troy Fleming, Ronnie Millet, Jarrod Nabor, Davarian Ursin, and Charles Ziegeler (collectively "Plaintiffs"); and a reply (Rec. Doc. 44) by Defendants. Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **DENIED**.

## FACTS AND PROCEDURAL BACKGROUND

This case arises from an alleged violation of the Worker Adjustment and Retraining Notification (WARN) Act by Defendants. Plaintiffs claim that they did not receive notice before BD LaPlace, LLC, d/b/a Bayou Steel Group closed the Bayou Steel mill, its corporate headquarters, and related facilities on October 1, 2019, in violation of the WARN Act. Plaintiffs assert that Defendants, Bayou Steel BD Holdings II, LLC and Black Diamond Capital Management, LLC, are liable for Bayou Steel's violation of the WARN Act as a "single employer."

In order to understand Plaintiffs' single employer argument, the ownership structure of Bayou Steel, where Plaintiffs worked, must be explained. In spring of 2016, a non-defendant private equity fund known as Black Diamond Opportunity Fund IV, LP acquired Bayou Steel. Subsequently, the ownership structure of Bayou Steel was established as follows. Bayou Steel became BD LaPlace, LLC, d/b/a Bayou Steel Group (hereinafter referred to as "Bayou Steel"), which is owned by Bayou Steel Investment, LLC, which is owned by Bayou Steel BD Holdings, LLC. These three non-defendant entities have jointly filed for bankruptcy in the District of Delaware. *In re Bayou Steel BD Holdings, L.L.C., et al*, No. 19-12153 (KBO) (Bankr. D. Del.). Bayou Steel BD Holdings, LLC is owned by Defendant Bayou Steel BD Holdings II, LLC ("BD Holdings II"), which is a holding company with no employees owned by non-defendant Black Diamond Opportunity Fund IV, LP.

Throughout BD LaPlace's ownership of the Bayou Steel mill, a non-defendant entity affiliated with Black Diamond known as Black Diamond Commercial Finance, LLC provided a total of $21 million in loans to BD LaPlace. Finally, Defendant Black Diamond Capital Management, LLC ("BDCM") is a privately held investment management firm that provides oversight and support to its portfolio of companies invested in by Black Diamond's affiliated private equity funds, such as the aforementioned Black Diamond Opportunity Fund IV, LP. BDCM appointed three of its professionals to serve on BD LaPlace's six-member Board of Directors (the "Board"), appointed one of BDCM's directors as Vice President of BD LaPlace, and offered strategic advice and support to BD LaPlace. Defendants provided the

following demonstrative exhibit to explain the ownership structure of Bayou Steel. (Rec. Doc. 8-2).

**DEMONSTRATIVE EXHIBIT**



In response to the present litigation, Defendants filed the instant motion for summary judgment, arguing that there is insufficient evidence to establish single employer liability, thus they are entitled to summary judgment as a matter of law.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the

record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may

not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

The WARN Act requires covered employers to provide employees with at least sixty days' notice before a plant closing or a mass layoff. 29 U.S.C. § 2102(a). An employer who fails to comply with the WARN Act is liable to each employee for back pay and benefits for up to sixty days, in addition to attorney's fees. § 2104(a). Defendants do not appear to dispute that the WARN Act was violated in this case, but instead, argue that they are not liable for Bayou Steel's violation of the WARN Act because they are separate entities.

As a general rule, parent companies are not liable for the actions of their subsidiaries. *U.S. v. Bestfoods*, 524 U.S. 51, 61 (1998). However, Plaintiffs argue that Defendants are liable for Bayou Steel's violation of the WARN Act as a "single employer." In determining whether a parent or entity is liable as a single employer under the WARN Act, courts utilize a five-factor test created by the Department of Labor. 20 C.F.R. § 639.3(a)(2). The five factors are: "(i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations." *Id.*; *Administaff Companies, Inc. v. New York Joint Bd., Shirt & Leisurewear Div.*, 337 F.3d 454, 457 (5th Cir. 2003).

## I.  COMMON OWNERSHIP

There is no dispute that BD Holdings II was in the chain of ownership of Bayou Steel. However, Plaintiffs argue that BDCM was the ultimate parent and owner of Bayou Steel through BD Holdings II and other intermediaries, which Defendants deny. In support of their argument, Plaintiffs cite to the deposition testimony of Bayou Steel executives, wherein they state that they believed that BDCM owned Bayou Steel. (Rec. Doc. 31-3, at p. 18; 31-5, at p. 5). Plaintiffs also cite to a power point generated by BDCM, which represents that "BDCM & affiliates" owned 100% of Bayou Steel Group. (Rec. Doc. 31-12, at p. 110). Finally, Plaintiffs cite to another memorandum from BDCM, which states that BDCM owns 100% of Bayou Steel's equity through Black Diamond Opportunity Fund IV, LP. (*Id.* at p. 111).

In its reply to this argument, BDCM explains that it does not own Black Diamond Opportunity Fund IV, LP, but instead, provides that entity with support and oversight, as it does with other private equity funds. (Rec. Doc. 44, at p. 3). Further, BDCM cites to the sworn declaration of the managing director of BDCM's private equity group, Sahand Farahnak, wherein he explains that Black Diamond Opportunity Fund IV, L.P. is owned by institutional investors, not BDCM. (Rec. Doc. 8-3, at p. 2). Although BDCM strongly denies that it was the ultimate parent of Bayou Steel, the Court finds that Plaintiffs have, at the least, presented sufficient evidence to create a genuine dispute of this fact through BDCM's own internal documents.

Plaintiffs argue in the alternative that BDCM had financial control over Bayou Steel, which satisfies the common ownership factor under the holding of *In re Tweeter*

*OPCO, LLC*, 453 B.R. 534, 542 (Bankr. Del. 2011) ("*Tweeter*"). However, *Tweeter* is easily distinguishable in that the defendant in that case was "first in line" in security and had complete control over the cash collateral, whereas, in this case, Bank of America and SunTrust held first priority liens over nearly all of Bayou Steel's assets. (Rec. Doc. 8-3, at pp. 4-5). Further, the entity that ultimately decided not to further finance Bayou Steel's operations was Black Diamond Commercial Finance, LLC, not BDCM. Accordingly, the Court finds Plaintiffs' financial control argument is not persuasive; however, the Court also finds that Plaintiffs have presented sufficient evidence to create a genuine dispute regarding whether BDCM was the ultimate parent of Bayou Steel.

## II.  COMMON DIRECTORS AND OFFICERS

It is undisputed that BD Holdings II is a holding company with no employees, and thus, it has no common directors or officers with Bayou Steel; however, three BDCM employees served as members of the Board. Philip Raygorodetsky, a BDCM managing director, served as chairman of the Board. Sahand Farahnak, another BDCM managing director, served as vice president of Bayou Steel and was also a director. James Hogarth, an employee of BDCM, also served as a director.

Plaintiffs do not argue that BDCM employees occupied the majority of the Board, but instead, they argue that the remaining independent directors were not actually independent because they took direction from BDCM and reported to Raygorodetsky and Farahnak. Specifically, Plaintiffs assert that BDCM unilaterally appointed and removed Bayou Steel's directors, who were compensated with $50,000

per year plus expenses and participation in a stock bonus plan. Plaintiffs also note that two of the independent directors, Bob Unfried and Terry Taft, were retained by Bayou Steel as consultants, which earned them an addition $1,000 per day.

Unfried, who concerned himself with all aspects of Bayou Steel's business, and Taft, who primarily focused on sales, routinely visited Bayou Steel, which Plaintiffs argue is unusual for directors. Plaintiffs allege that Unfried and Taft reported to Farahnak and Raygorodetsky and did not share their reports with Bayou Steel's management. Plaintiffs also cite to the deposition testimony of Alton Davis, wherein he testified that Unfried was sent by Farahnak and Raygorodetsky to "snoop, spy, try to improve certain things, [and] evaluate certain things that should be a management function." (Rec. Doc. 31-3, at p. 61). Further, Plaintiffs cite to an e-mail from Unfried to Farahnak, in which he wrote, "[c]learly we received good value for BSG [Bayou Steel Group] and knew it would be a lot of work." (Rec. Doc. 31-12, at p. 161). The use of the word "we" tends to indicate that Unfried believed that he was working at the behest of some entity other than Bayou Steel. In this same e-mail, Unfried criticized Bayou Steel's then-CEO, Bob Simon, and suggested that he should be replaced, while suggesting he would be an appropriate replacement and requesting to be paid fairly for his work. (*Id.* at 161-62). Although Unfried was never made CEO, after Simon was terminated, he described himself in an e-mail to Raygorodetsky as wearing a Black Diamond hat and a quasi-CEO/Consultant/Bayou Steel hat. (*Id.* at p. 22).

These communications are clearly sufficient to present a genuine issue of material fact that these "independent" directors, specifically Unfried, may have been influenced by BDCM, such that they were not truly independent.

### III. DE FACTO EXERCISE OF CONTROL

The third factor, de facto control, considers "whether the parent has specifically directed the allegedly illegal employment practice that forms the basis for the litigation." *Pearson v. Component Technology Corp.*, 247 F.3d 471, 503 (3d Cir. 2001). It is "not intended to support liability based on a parent's exercise of control pursuant to the ordinary incidents of stock ownership." *Id.* at 503. This factor is the most heavily weighted because, if the evidence of de facto control is egregious, such evidence alone could be sufficient to warrant single employer liability. *Id.* The weight attributed to this factor is rooted in the text of the WARN Act, which only imposes liability on an "employer who orders a plant closing or mass layoff." 29 U.S.C. § 2104(a)(1); *see also Administaff,* 337 F.3d at 456.

In August 2019, Farahnak and Raygorodetsky alerted Steve Deckoff, the managing principal of BDCM, that Bayou Steel needed $8 million to survive its financial situation. Deckoff approved a $1 million advance conditioned upon it being a secured loan. In September 2019, Deckoff twice visited Bayou Steel in order to discuss a plan developed by Bayou Steel's then-CEO, Mike Williams, to make Bayou Steel profitable through a significant financial commitment. During the second visit on September 18-19, Deckoff asked John Fontana, a BDCM senior executive, his opinion on whether Bayou Steel should be reorganized or liquidated. On September

9

20, Fontana recommended liquidation but also offered to lead Bayou Steel if Deckoff was willing to spend more to salvage the business through Black Diamond Commercial Finance, LLC. (Rec. Doc. 31-12, at p. 36). On September 22, Hogarth also sent Deckoff an analysis of debtor in possession financing that projects Bayou Steel's operating capacity, sales, and expenses in the event it entered a bankruptcy. (*Id.* at p. 106). In response to Fontana's e-mail, Deckoff stated that he did not want to put any more money into Bayou Steel. (Rec. Doc. 31-12, at p. 36).

Plaintiffs argue that BDCM, through Deckoff's decision not to provide additional funding to Bayou Steel, essentially forced them to enter bankruptcy. This argument is complicated by the fact that the entity that ultimately decided not to further finance Bayou Steel's operations was Black Diamond Commercial Finance, LLC, not BDCM. However, regardless of the corporate structure at play in this case, Plaintiffs have failed to provide the Court with any cases establishing single employer liability for a parent company's decision not to provide additional financing to a subsidiary. On the other hand, Defendants have cited multiple cases where courts have declined to find single employer liability due to a parent's decision not to provide additional financing to its subsidiary under the WARN Act.[1] Accordingly, the Court finds Plaintiffs' de facto control through financing argument unavailing.

---

[1] *See, e.g., Pearson*, 247 F.3d at 495 ("[J]ust as a parent's ownership of stock will not suffice to create liability for the parent," so too the failure to invest further in a subsidiary does not create "single employer" WARN Act liability); *In re Jevic Holding Corp.*, 492 B.R. 416, 429 (Bankr. D. Del. 2013), *aff'd*, 526 B.R. 547 (D. Del. 2014), *aff'd*, 656 F. App'x 617 (3d Cir. 2016); *Adams v. Erwin Weller Co.*, 87 F.3d 269, 272 (8th Cir. 1996) ("Although WCC's position as EWC's financial life-line undoubtedly gave it the capacity to exert influence over EWC's decisions, this power is inherent in any debtor-creditor relationship and its exercise does not translate into decision making control for the purposes of WARN's employer rule.").

Plaintiffs also argue that BDCM and its employee/directors at Bayou Steel extered de facto control in conceiving, adopting, and implementing the plan to liquidate Bayou Steel and lay off its employees. It is a "well established principle that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately." *United States v. Bestfoods*, 524 U.S. 51, 69 (1998). Further, there is a presumption that the activity of the directors is on behalf of the subsidiary, which "is strongest when the act is perfectly consistent with the norms of corporate behavior" and weakest when an act appears to be "plainly contrary to the interests of the subsidiary yet nonetheless advantageous to the parent." *Id.* at 70 n.13. Thus, to expose a parent or affiliated company to single employer liability due to the directors' dual positions, a plaintiff must point to evidence that the directors were actually acting in their capacity as a representative of the parent or affiliate rather than the subsidiary. *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 779 (5th Cir. 1997).

On September 22, Black Diamond's in-house counsel contacted a financial advisor from Candlewood Partners, LLC and bankruptcy counsel from Polsinelli, PC. Later that day, Hogarth met with Bayou Steel's other directors, discussed BDCM's likely unwillingness to continue to fund the business, and recommended that the company retain bankruptcy financial advisor and counsel to prepare for potential bankruptcy. (Rec. Doc. 31-12, at p. 106). The Board subsequently approved a motion to retain BDCM's recommended bankruptcy financial advisor and counsel, Candlewood and Polsinelli. (*Id.*). On September 27, Candlewood and Polsinelli

11

presented to the Board concerning the company's financial condition and issues related to a potential bankruptcy. (Rec. Doc. 8-3, at p. 9). After the presentation, the Board voted to file for bankruptcy with all BDCM affiliated directors abstaining from the decision. (*Id.* at p. 10).

Plaintiffs appear to place much emphasis on the fact that BDCM began preparing for Bayou Steel's bankruptcy before the Board voted to file for bankruptcy; however, BDCM was already aware that Bayou Steel needed another $7 million in financing to survive. Thus, once Deckoff decided that Black Diamond Commercial Finance, LLC would not provide Bayou Steel with further financing, it was reasonable for BDCM to assume that the company would be left with no option but to file for bankruptcy. Further, BDCM affiliated directors abstained from the vote to file for bankruptcy, and, again, the company needed additional financing to survive, which it had no means of attaining. Finally, as noted by Defendants, Plaintiffs have provided no indicia of how BDCM or BD Holdings II benefitted from the Board's decision to declare bankruptcy.

On the other hand, Plaintiffs have cited to plenty of evidence showing that most of the members of the Board were, at the very least, heavily influenced by BDCM. Further, although the BDCM affiliated directors may have abstained from the vote to file bankruptcy, they did vote to hire BDCM's recommended bankruptcy counsel and financial advisor, who presented to the remainder members of the Board before those members voted to file for bankruptcy. Finally, as mentioned above, there is evidence supporting Plaintiffs' argument that Unfried and Taft were heavily

12

influenced by BDCM. Accordingly, the Court finds that there is sufficient evidence to establish a genuine issue of material fact regarding whether BDCM exerted de facto control over Bayou Steel.

### IV. UNITY OF PERSONNEL POLICIES EMANATING FROM A COMMON SOURCE

Unity of personnel policies is present when the parent "had a particular interest in how the [subsidiaries'] policies were designed or issued specific directives to [the subsidiary] on the subject." *Pearson*, at 499. In support of their argument that BDCM directed personnel policies at Bayou Steel, Plaintiffs cite to an e-mail from Raygorodetsky to his fellow directors, in which he states that his "boss" (presumably Deckoff) approved his proposal to cut costs in a manner that reflects the tough financial situation that Bayou Steel was in. (Rec. Doc. 31-12, at pp. 228-29). In this e-mail, Raygorodetsky elaborated that "we" (presumably he and BDCM) planned to cut headcount, compensation, benefits, and any other advisable cuts to get Bayou Steel through its financial difficulties. (*Id.*) Subsequently, Bayou Steel implemented a retirement plan discontinuance, 401k match freeze, insurance plan changes, pay cuts, and a freeze on the incentive plan for some supervisors. Plaintiffs argue that Raygorodetsky's emails, which indicate that he received approval from BDCM, and the subsequent policies implemented by Bayou Steel to cut costs, are evidence sufficient to show BDCM was directing personnel policies.

In response, Defendants argue that Bayou Steel had its own internal human resources department that sets its internal policies. Further, as explained above, Defendants again point to the fact that Bayou Steel was in financial danger and

implementing cost-cutting measures is a normal response to the company's precarious position.

Defendants' argument misses the mark. The unity of personnel factor requires the factfinder to weigh whether the parent or affiliated company influenced or directed policy decisions, not whether the policy decisions are normal for a corporation to take under the circumstances. It is clear from Raygorodetsky's emails that he discussed cost-cutting measures for Bayou Steel with BDCM management, communicated these measures to the Board, and Bayou Steel subsequently implemented these measures. This evidence alone is sufficient to create a genuine issue of material fact regarding whether BDCM directed personnel policies through Raygorodetsky.

## V. DEPENDENCY OF OPERATIONS

In determining whether a subsidiary is dependent on the parent or affiliate for its operations, the factfinder must look to whether the companies share "administrative or purchasing services, interchange employees or equipment, [or] commingle finances." *In re APA Trasp. Corp. Consol. Litig.*, 541 F.3d 233, 245 (3d Cir. 2008).

Plaintiffs argue that BDCM arranged Bayou Steel's financing such that it was entirely dependent on BDCM for further infusions of working capital to continue operations. However, this argument is more analogous to the financial control argument Plaintiffs asserted under the first factor. The question under this factor is not whether BDCM had financial control over Bayou Steel, but instead, whether the

parent comingled assets such that the subsidiary was entirely dependent on the parent to continue operations. *See Childress v. Darby Lumber, Inc.*, 357 F3d 1000, 1006-07 (9th Cir. 2004) (finding subsidiary dependent on parent because ninety percent of the subsidiaries revenue was derived from transactions with the parent). Further, Black Diamond Commercial Finance, LLC, not BDCM, was the entity providing financing to Bayou Steel. Thus, there is no genuine dispute that Bayou Steel was not dependent on BDCM for its operations.

In sum, there are genuine issues of material fact regarding four of the five factors in the single employer liability test, including the all-important de facto control factor. Therefore, the Court finds that summary judgment is inappropriate in this case.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' *Motion for Summary Judgment* **(Rec. Doc. 8)** is **DENIED**.

New Orleans, Louisiana, this 29th day of April, 2021.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE