UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TROY FLEMING, ET AL. | CIVIL ACTION |
| VERSUS | NO: 20-1476 |
| BAYOU STEEL BD HOLDINGS II LLC, ET AL. | SECTION: "J"(4) |

## ORDER & REASONS

Before the Court is a *Motion to Strike Plaintiffs' Demand for a Jury Trial* **(Rec. Doc. 65)** filed by Bayou Steel BD Holdings II, LLC ("BD Holdings II") and Black Diamond Capital Management, LLC ("Black Diamond") (collectively, "Defendants"); an opposition (Rec. Doc. 66) filed by Plaintiffs; and a reply (Rec. Doc. 72) filed by Defendants. Having considered the motion, legal memoranda, record, and applicable law, the Court finds that the motion should be granted.

## FACTS AND PROCEDURAL BACKGROUND

This case arises from an alleged violation of the Worker Adjustment and Retraining Notification Act ("WARN Act") by Defendants. Plaintiffs, former employees of Defendants, claim that they did not receive notice before BD LaPlace, LLC, d/b/a Bayou Steel Group closed the Bayou Steel mill, its corporate headquarters, and related facilities on October 1, 2019, in violation of the WARN Act. Plaintiffs assert that Defendants, Bayou Steel BD Holdings II, LLC and Black Diamond Capital Management, LLC, are liable for Bayou Steel's violation of the WARN Act as a "single employer."

## LEGAL STANDARD

The Seventh Amendment confers a constitutional right to a jury trial in civil matters at common law, and this right extends to statutory actions "if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law." *Curtis v. Loether*, 415 U.S. 189, 194 (1974). However, when the statute at issue is silent as to whether a trial by jury is available, such as the WARN Act, the Supreme Court has established a two part test to determine whether a party enforcing a statutory right is entitled to a jury trial. *See Tull v. United States*, 481 U.S. 412, 417–18 (1987). "To determine whether a particular action will resolve legal rights, we examine both the nature of the issues involved and the remedy sought." *See Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 565 (1990). First, the court must compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. *Tull*, 481 U.S. at 417–18. Second, the court must examine the remedy sought and determine whether it is legal or equitable in nature. *Terry*, 494 U.S. at 565. The second inquiry is more important than the first. *Id.* If the remedy sought is legal in nature, the Seventh Amendment provides for the right to a jury trial; if the remedy sought is equitable in nature, no right to a jury trial exists. *See id.* 564–65.

## DISCUSSION

I. **CURRENT CASE LAW: THE WARN ACT AND THE SEVENTH AMENDMENT**

Neither the Fifth Circuit nor any district within the Fifth Circuit have addressed the issue of a right to a jury trial on a claim brought under the WARN Act.

2

Moreover, the only appellate court to address this issue is *Bledsoe v. Emery Worldwide Airlines, Inc.*, 635 F.3d 836 (6th Cir. 2011) in which the Sixth Circuit held there is no right to a jury trial on a WARN Act claim. Here, Defendants argue that the Court should follow *Bledsoe* and its subsequent case law. (Rec. Doc. 65). Plaintiffs, in opposition, contend that there is a clear split in authority among district courts outside of the Sixth Circuit, (Rec. Doc. 66, at 1), and that the Supreme Court's *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry* decision considering whether breach of a collective bargaining agreement creates a right to a jury trial is more persuasive, *id.* at 3. Thus, the Court will begin by looking at these decisions.

**A.  *Bledsoe* and the Subsequent Case Law**

The court in *Bledsoe* applied the well-established Seventh Amendment jury inquiry test to the WARN Act. First, in assessing the nature of the right, the court recognized that it is "undisputed that no action for failing to give advance notice of an employment loss was known to 18th-century England." *Bledsoe*, 635 F.3d at 841. Moreover, the court found that the nature of a WARN Act claim is more akin to a breach of fiduciary duty claim, which has an equitable remedy, than a breach of contract or personal injury claim, which have legal remedies. *Id.* at 842.

Second, in analyzing the WARN Act's remedies, the court began by explaining that the exclusive remedies of the WARN Act are to restore the pay and benefits an employer "should have provided" its laid off employees during, or in lieu of, the sixty-day notice period. *Id.* at 843. The WARN Act is "tailored to restoring the pay and benefits that the employer should have provided to its aggrieved employees" during

3

the period of violation. *Id.* "This is restitutionary in nature, and is not compensation for discriminatory or otherwise wrongful termination or layoff[,]" which distinguishes the WARN Act from other backpay claims. *Id.* Importantly, the court noted that "no additional or alternative damages are provided for" under the WARN Act, and the employer's "liability is limited to the number of days of violation and offset by other payments to or on behalf of the employee." *Id.* (citation omitted). Finally, the court emphasized the importance of the WARN Act placing the entire amount of liability in the district court's discretion. *Id.* at 844. "Such judicial discretion is a hallmark characteristic of an equitable remedy." *Creech v. Va. Fuel Corp*, 61 F. Supp. 3d 592, 596 (W.D. Va. 2014). As Justice Rehnquist explained in his concurrence in *Albermarle Paper Co. v. Moody*: "[t]o the extent, then, that the District Court retains substantial discretion as to whether or not to award back pay notwithstanding a finding of unlawful discrimination, the nature of the jurisdiction which the court exercises is equitable . . . ." 422 U.S. 405, 443 (1975). Therefore, the court in *Bledsoe* held that the WARN Act remedies are equitable, and thus, there is no right to a jury trial

All of the cases addressing the right to a jury trial in a WARN Act claim since *Bledsoe*, except one, have followed *Bledsoe* and found there is no right to a jury trial in a WARN Act claim.[1] The courts that followed *Bledsoe* did so for two main reasons.

---

[1] *Compare Day v. Trucking Servs., Inc.*, No. 4:09CV00031 SWW, 2014 WL 2718188 (E.D. Ark. June 16, 2014), *aff'd sub nom. Day v. Celadon Trucking Servs., Inc.*, 827 F.3d 817 (8th Cir. 2016) (finding no right to a jury trial under the WARN Act because WARN Act damages are restitutionary in nature and analogous to reimbursement of wrongfully withheld funds, as opposed to compensation for damages flowing from wrongful termination), *and Gregory v. EBF & Assoc., L.P.*, No. CV 09-691 (PAM/LIB), 2011 WL 13201854 (D. Minn. Apr. 7, 2011), *and Nelson v. Formed Fiber Techs., LLC*, No. 2:10-CV-473-GZS, 2012 WL 118490 (D. Me. Jan. 13, 2012), report and recommendation adopted, No. 2:10-CV-473-GZS, 2012 WL 1253050 (D. Me. Apr. 13, 2012), *and Calloway v. Caraco Pharm. Lab'ys, Ltd.*, No. CV 11-15465, 2013 WL 12334237 (E.D. Mich. Sept. 5, 2013), *and Creech v. Va. Fuel Corp.*,

4

First, subsequent courts found persuasive the *Bledsoe* court's reasoning that the nature of the right established in the WARN Act is not comparable to a contract or tort cause of action but more comparable to a breach of fiduciary duty claim. In *Plerluca v. Quality Resources, Inc.*, the court found the analogy of a WARN Act claim to a breach of contract claim unpersuasive because a "WARN Act violation is purely a creature of statute—its remedies do not flow from an agreement between the parties requiring advance notice of mass layoffs." 2017 WL 1409825, at *1. Further, in *Gregory v. EBF & Associates, L.P.*, the court found, like the court in *Bledsoe* did, that the most analogous cause of action to a WARN Act claim is that of an employer's breach of fiduciary duty. 2011 WL 13201854, at *4.

> [T]he fiduciary duty [is] that of an employer to safeguard the welfare of its employees by giving them at least 60 days' notice of any impending mass layoff or plant closing, or, in the absence thereof, remuneration for the number of working days for which it should have given advance notice, but did not. If viewed in this light, the employer might be seen as a trustee, and the relief sought, that being back pay and benefits for a limited, definite time period, might be viewed as funds wrongly managed or withheld by the trustee. Damages, therefore, would be in the nature of restitution, an equitable remedy.

*Id.* (quoting *Bledsoe v. Emery Worldwide Airlines*, 258 F. Supp. 2d 780, 793 (S.D. Ohio 2003), *aff'd sub nom. Bledsoe v. Emery Worldwide Airlines, Inc.*, 635 F.3d 836 (6th Cir. 2011)).

---

61 F. Supp. 3d 592 (W.D. Va. 2014), *and Plerluca v. Quality Res., Inc.*, No. 8:16-CV-1580-T-30AEP, 2017 WL 1409825 (M.D. Fla. Apr. 20, 2017), *and Morris v. Moon Ridge Foods, LLC*, No. 18-CV-03219-SRB, 2019 WL 7593902 (W.D. Mo. Aug. 14, 2019), *with Carlberg v. Guam Indus. Servs.*, No. CV 14-00002, 2017 WL 4381667 (D. Guam Sept. 30, 2017).

5

Second, subsequent courts found persuasive the *Bledsoe* court's argument that the WARN Act's remedies are restitutionary in nature and thus equitable. In *Plerluca*, the court agreed with the reasoning in *Bledsoe* that the backpay remedy is equitable because it seeks to restore the aggrieved employees to the place they would have been if not for the violation, and the discretionary nature simply reinforces this "equitable" conclusion. 2017 WL 1409825, at *2. Moreover, in *Gregory*, the court found that although a remedy in the form of money damages is "the traditional form of relief offered in the courts of law," one exception is where such damages are restitutionary. 2011 WL 13201854, at *5 (citations omitted). "Given the fact that damages awarded under the WARN Act are paid by an employer, calculated over a short, definitive time period, and are ultimately committed to the discretion of the trial court, such damages are inherently restitutionary." *Id*. Finally, in finding that the WARN Act remedy is restitutionary in nature, the court in *Nelson v. Formed Fiber Techs., LLC* said: "an employer does reap what is, in effect, an unjust gain when it fails to provide qualifying employees the wages and benefits due pursuant to the WARN Act. In suing to recoup those withheld wages and/or benefits, an employee, in effect, seeks restitution of those particular things." 2012 WL 118490, at *5. Further, "the WARN Act remedy is designed to restore the status quo, a trademark indicium of equitable relief . . . ." *Id*. (citing *Braunstein v. McCabe*, 571 F.3d 108, 122 (1st Cir. 2009)).

The single court that declined to follow *Bledsoe* found the WARN Act's remedies legal based upon an evaluation of the WARN Act's "linguistic clues, the

6

Ninth Circuit's characterization of WARN's purposes and remedies, the legislative history, the settled understanding in the case law that the WARN Act most closely resembles longstanding state actions offering legal remedies, and the general historical practice of permitting jury trials for WARN Act claims . . . ." *Carlberg*, 2017 WL 4381667, at *9.

The court's analysis in *Carlberg v. Guam Industrial Services* was rooted in its "own appellate guidance on the question of the nature of the WARN Act remedy." *Id.* at *7. First, as the Ninth Circuit, the circuit court for the District of Guam, explained, "damages under the [WARN] Act should compensate employees for the money they would have earned but for the premature closure in violation of the WARN Act." *Id.* (quoting *Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1159 (9th Cir. 2001)). Despite classifying the remedy as restitutionary, the *Carlberg* court opined that "characterizing the remedy as restitutionary provides little, if any, actual guidance as to whether the remedy is legal or equitable." *Id.* at *8 (citing Restatement (Third) of Restitution and Unjust Enrichment § 4 (2011)). The court specifically cited to the Restatement Third of Restitution and Unjust Enrichment which noted "widespread error" in "the assertion that a claim in restitution . . . is by its nature equitable rather than legal."

Instead, the *Carlberg* court reasoned that considerations other than the restitutionary nature of the WARN Act remedies provide clearer guidance when determining whether the remedies are legal or equitable. *Carlberg*, 2017 WL 4381667, at *8. First, the fact "[t]hat Congress explicitly prohibited injunctive relief

7

suggests that WARN's remedies were not originally understood as entirely equitable, given the widely-held understanding of injunctive relief as 'a traditional equitable remedy.'" *Id.* (citing *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 864 (9th Cir. 2017)). Additionally, there is no reference in the WARN Act to equity. *See, e.g., Terry*, 494 U.S. at 559 (1990) (highlighting Congress' "specific" characterization of backpay under Title VII as "equitable relief"). Finally, the *Carlberg* court returned to Ninth Circuit precedent in describing the WARN Act's remedy as "a make-whole compensatory remedy." *Id.* at *7 (quoting *Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund*, 244 F.3d at 1159). Compensatory damages are a "classic legal remedy," which thus suggests the Ninth Circuit views the WARN Act remedies as legal. *Id.* (citations omitted). Accordingly, the *Carlberg* court reasoned that the statutory language, the legislative history, and the relevant history of the WARN Act all counsel in favor of a conclusion that an action arising under the WARN Act "is a legal action which has legal remedies" and thus brings with it a Seventh Amendment right to jury trial. *Id.*

### B. Pre-*Bledsoe*

Instead of focusing on *Bledsoe* and its subsequent case law, Plaintiffs urge this Court to look to *Terry* and the court decisions prior to *Bledsoe*. (Rec. Doc. 66). The court in *Terry* addressed whether an action for breach of a labor union's duty of fair representation and breach of a collective bargaining agreement created a right to a trial by jury. 494 U.S. at 558. First, the *Terry* court found that this action was unknown in 18th century England, and therefore looked to analogous causes of

8

action. *Id.* at 565–66. The court found persuasive an analogy to a breach of fiduciary duty under a trust, but "the trust analogy [did] not persuade [the court] to characterize respondents' claim as wholly equitable." *Id.* at 569. Specifically, the court emphasized that "[t]he Seventh Amendment question depends on the nature of the *issue* to be tried rather than the character of the overall action." *Id.* (quoting *Ross v. Bernhard*, 396 U.S. 531, 538 (1970)). The court stated that the breach of the duty of fair representation may be equitable, but the breach of the collective bargaining agreement is legal. *Id.* at 570. Thus, the court then moved to examining the nature of the remedy. *Id.*

The only remedy sought in *Terry* were damages representing backpay and benefits. *Id.* Although, monetary recovery on claims is generally legal in nature, the Supreme Court has made clear there are two exceptions when monetary recovery sounds in equity: when it is restitutionary in nature or when it is intertwined with claims for injunctive relief. *See Borst v. Chevron Corp.*, 36 F.3d 1308, 1324 (5th Cir. 1994) (citing *Terry*, 494 U.S. at 570–71). The *Terry* court found that neither of the exceptions to monetary damages applied, and therefore the remedy was legal. *Id.* First, the damages were not restitutionary because "[t]he backpay sought by respondents [was] not money wrongfully held by the Union, but wages and benefits they would have received from [their employer] had the Union processed the employees' grievances properly." *Id.* at 570–71. Second, the monetary damages were not incidental to or intertwined with injunctive relief because no such relief was

sought. *Id.* Therefore, the court held that "the remedy of backpay sought in this duty of fair representation action is legal in nature."

Despite Plaintiffs' reliance on *Terry*, they fail to address the fact that the district court in *Bledsoe* addressed *Terry* and arguments like those made by Plaintiffs here. *Bledsoe*, 258 F. Supp. 2d at 798.

> [W]hat the Plaintiffs herein are seeking is not compensation for the damages flowing from their discharge, but a reimbursement of those salaries and benefits, calculated on a per diem basis, which were due to them on the date they were laid off, in lieu of [their employer's] having given them proper notice of their layoffs, and which have to this point in time been wrongly withheld from them.

*Id.* Instead, Plaintiffs rely on a handful of district court cases decided before *Bledsoe* to contend that the backpay sought in WARN actions is not "wrongfully withheld funds." (Rec. Doc. 66, at 4) (citing *Geelan v. Mark Travel, Inc.*, No. CV 03-6322, 2006 WL 8445200, at * 6 (D. Minn. Sept. 22, 2006) ("Plaintiffs are not seeking money wrongfully held by defendant but are asking for an award of wages and benefits that they would have received from defendant if it had complied with its legal obligations to provide adequate notice prior to a layoff."); *United Steelworkers of Am., AFL-CIO-CLC v. Dietrich Indus., Inc.*, No. CV93-H-540-S, 1994 WL 661193, at *1 (N.D. Ala. June 29, 1994) ("[t]he monetary payment is simply not 'back pay' and has no relation to the pay which the employee would have been entitled to receive but for the closure, layoff or violation."); *Bentley v. Arlee Home Fashions, Inc.*, 861 F. Supp. 65, 68 (E.D. Ark. 1994) ("The WARN Act compensates the former employees for damages caused through the employer's failure to provide the requisite notice of intentions to close the plant or layoff a large amount of employees. The employer has not obtained any

10

gain by its failure to comply with the Act. Thus, the remedy under the Act appears to be legal in nature.")). Plaintiffs have not presented evidence sufficient for the Court to be the second, in over ten years, to decline to follow *Bledsoe*. However, because *Bledsoe* is not binding on this Court, we will next look at the Fifth Circuit's precedent regarding the WARN Act.

## II.  THE FIFTH CIRCUIT

### A.  THE FIFTH CIRCUIT AND OTHER STATUTES

Because monetary recovery on claims, such as backpay, is generally legal in nature, the backpay recovery at issue must meet one of the two exceptions: restitutionary in nature or intertwined with claims for injunctive relief. *See Borst*, 36 F.3d at 1324. The Fifth Circuit has applied these exceptions to backpay recovery under a handful of statutes, including Title VII; 42 U.S.C. § 1983; and ERISA. First, many courts, including *Bledsoe*, have relied upon the comparison of Title VII backpay remedies and the WARN Act backpay remedies in their determination that the WARN Act remedies are equitable. As such, this Court will begin there. The Fifth Circuit has found that a claim for backpay under Title VII is equitable in nature because it "is an integral part of the statutory equitable remedy, to be determined through the exercise of the court's discretion." *Johnson v. Ga. Highway Exp., Inc.*, 417 F.2d 1122, 1125 (5th Cir. 1969). However, unlike the language of the WARN Act, which lacks a reference to equity and does not allow the court to enjoin the employer, Title VII says, in pertinent part,

> [T]he court may enjoin the respondent . . . , and order such affirmative action as may be appropriate, which may include, but is not limited to,

11

> reinstatement or hiring of employees, with or without back pay . . . or any other equitable relief as the court deems appropriate.

42 U.S.C. § 2000e-5(g)(1). Therefore, the only similarity between Title VII and WARN Act backpay is the application of the court's discretion. This Court does not find Title VII comparable to justify a finding that the WARN Act's remedies are equitable.

The next backpay remedy the Fifth Circuit has addressed is that of 42 U.S.C. § 1983 claims. In *Harkless v. Sweeny Independent School District,* African American schoolteachers alleged violations of their civil rights under § 1983 when the school district failed to renew their teaching contracts after desegregation. 427 F.2d 319 (5th Cir. 1970). The court stated:

> The prayer for back pay is not a claim for damages, but is an integral part of the equitable remedy of injunctive reinstatement. Reinstatement involves a return of the plaintiffs to the positions they held before the alleged unconstitutional failure to renew their contracts. An inextricable part of the restoration to prior status is the payment of back wages properly owing to the plaintiffs, diminished by their earnings, if any, in the interim. Back pay is merely an element of the equitable remedy of reinstatement."

*Id.* at 324. Thus, the equitable nature of the backpay remedy stemmed from its interwovenness with the injunctive reinstatement, and thus, this comparison is inapplicable to the WARN Act remedy, because, as noted above, the WARN Act does not allow the court to enjoin the employer.

Finally, in applying the restitutionary exception in *Borst v. Chevron Corporation*, the Fifth Circuit found that the restitutionary exception was relevant to a group of plaintiffs' claims for distribution of surplus ERISA plan assets. 36 F.3d at 1324. In *Borst*, the plaintiffs were seeking "restitution of money allegedly wrongly

held by the defendants." *Id.* Thus, the Fifth Circuit found that the plaintiffs' claims were equitable in nature and not entitled to a jury trial under the Seventh Amendment. *Id.* Arguably, ERISA is the most comparable to the WARN Act because WARN Act claimants may seek lost ERISA benefits, and "Congress would likely not have intended to extend Seventh Amendment protection to a WARN claimant when ERISA does not provide such protection." Noah Yavitz, *The Right to Trial by Jury Under the Warn Act,* 79 U. CHI. L. REV. 1629, 1641 (2012) (citing *Bledsoe,* 258 F. Supp. 2d at 798). Therefore, like the court in *Bledsoe*, which found that the backpay remedy under the WARN Act was wrongfully withheld funds, the Fifth Circuit has classified undistributed ERISA plan assets as wrongfully withheld funds. Based on this "wrongfully withheld fund" classification, the Fifth Circuit found that the plaintiffs' claims were equitable and thus not entitled to a jury. Accordingly, because the WARN Act backpay remedy may be classified similarly, this WARN Act backpay remedy is an equitable remedy that does not entitle the plaintiffs to a jury trial.

### B. THE NATURE OF THE RIGHT AND REMEDY OF THE WARN ACT UNDER PRIOR FIFTH CIRCUIT PRECEDENT

Next, beyond comparing the WARN Act to other statutes, this Court will look to how the Fifth Circuit has previously addressed the nature of the right and nature of the remedy of the WARN Act. First, in regard to the nature of the right, the Fifth Circuit found that "[a] WARN action is not particularly analogous to either" a tort claim or a contract claim. *Staudt v. Glastron, Inc.*, 92 F.3d 312, 316 (5th Cir. 1996). Although the Fifth Circuit has mentioned that the predicate for liability under the WARN Act is comparable to a tort claim, "in that both require a 'wrongful' act by the

13

defendant," the Fifth Circuit has yet to classify the nature of the right itself. *Id.* Thus, it appears that the Fifth Circuit follows *Bledsoe* and the subsequent case law in finding that a WARN Act claim is not particularly comparable to either a tort or contract claim.

However, when looking at the nature of the remedy of a WARN Act claim, the Fifth Circuit has more directly spoken to this issue and found the WARN Act remedies comparable to that of a debt for wages owed. "If we consider WARN's remedial goal and the damages available under the statute, it is analogous to an action on a debt for wages owed." *Id.* The Fifth Circuit's analogy to a debt for wages owed is comparable to the analogy raised in *Bledsoe* of a fiduciary duty between employer and employee in which "the employer might be seen as a trustee, and the relief sought, that being back pay and benefits for a limited, definite time period, might be viewed as funds wrongly managed or withheld by the trustee." *Bledsoe*, 258 F. Supp. 2d at 793. The trustee (employer) has the fiduciary duty to pay out the funds (back pay and benefits) to the beneficiaries (employees), and this payment of funds has its goal in restitution. Similarly, in a debt for wages owed claim, the debtor (employer) has the duty to pay the debt he owes (backpay and benefits) to the creditor (employees). Notably, equitable remedies are limited to "restoring the status quo and ordering the return of that which rightfully belongs" to the individual. *See Tull v. United States*, 481 U.S. 412, 424 (1987) (quoting *Porter v. Warner Holding Co.*, 328 U.S. 395, 402 (1946)). In comparison, legal remedies are "intended to punish culpable individuals." *Id.* at 422. The remedies of paying out funds; paying a wage debt owed;

and paying backpay and benefits are not intended to punish the trustee, debtor, and employer, but instead intended to restore the status quo and return what rightfully belongs to the beneficiary, creditor, and employee.

Moreover, as stated by the Fifth Circuit, "the legislative history [of the WARN Act] makes clear that Congress intended the 'back pay' language . . . to connote the traditional back pay remedy as discussed in *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 197 (1941)." *Carpenters Dist. Council of New Orleans & Vicinity v. Dillard Dep't Stores, Inc.*, 15 F.3d 1275, 1285 (5th Cir. 1994). "[T]he Supreme Court has explained that 'back pay' suggests a remedy such that the damaged employee is restored 'as nearly as possible, to that which would have [been] obtained but for the [violation].'" *Id.* at 1283 (quoting *Phelps Dodge Corp.*, 313 U.S. at 194). Thus, the WARN Act remedy of back pay aims to place the aggrieved employees in the position they would have occupied had the violation never occurred. *Id.*

Specifically, the discussion in *Carpenters District Council of New Orleans & Vicinity v. Dillard Department Stores, Inc.* of "work days" versus "calendar days" is quite telling. The Fifth Circuit held that the back pay contemplated by the WARN Act was to be measured by work days – "the wages the employee would have received had the employee continued working" – but not calendar days, which "would provide an employee with damages in excess of what he or she would have received had the plant remained open . . . ." *Id.* at 1285. Therefore, pursuant to the Fifth Circuit, the aim of the WARN Act remedies is restoration. Accordingly, the idea of restoration of the employee to the position they would have been in if not for the employer's violation

15

of the WARN Act is equitable in nature and aims to restore the status quo and return the employees' wrongfully withheld pay and benefits.

Finally, Plaintiffs urge the Court to rely upon the Fifth Circuit's decision in *Hollowell v. Orleans Regional Hospital, LLC*, 217 F.3d 379 (5th Cir. 2000) in which the Fifth Circuit upheld a jury's findings regarding a WARN Act claim. (Rec. Doc. 66, at 7–8). On appeal in *Hollowell* was the jury's final decision concerning the WARN Act claim, not the use of the jury itself in the trial. *Id.* The right to a jury trial was never raised and not at issue in *Hollowell*. *Id.* Thus, Defendants are correct that "[a] court is under no obligation to strike a jury where a defendant raises no objection to its demand." (Rec. Doc. 72, at 7). Plaintiff's reliance on this case is unfounded.

Therefore, after considering *Bledsoe* and its subsequent case law; the Fifth Circuit's classification of the backpay in ERISA; and the Fifth Circuit's prior analysis of the WARN Act, the Court finds that there is no right to a jury trial under a WARN Act claim.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Bayou Steel BD Holdings II, LLC and Black Diamond Capital Management, LLC's *Motion to Strike Plaintiffs' Demand for a Jury Trial* **(Rec. Doc. 65)** is **GRANTED**.

New Orleans, Louisiana, this 19th day of January, 2022.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE