UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TROY FLEMING et al          CIVIL ACTION

VERSUS          NO: 20-1476

BAYOU STEEL BD HOLDINGS II LLC, et al          SECTION: "J"(4)

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court held a bench trial on the merits in this matter on Monday, April 1, 2024 to decide one issue on remand from the Fifth Circuit Court of Appeals: "whether [Black Diamond Capital Management L.L.C. ("Black Diamond")] exercised de facto control over Bayou Steel's decision to close its LaPlace steel mill and order Plaintiffs' layoffs." *Fleming v. Bayou Steel BD Holdings II L.L.C.*, 83 F.4th 278, 300 (5th Cir. 2023) (hereinafter "Fifth Circuit opinion"). After consideration of the testimony and evidence submitted, and the arguments of counsel, the Court issues the following Findings of Fact and Conclusions of Law pursuant to Fed. R. Civ. P. 52(a).

This case is a class action brought by former employees of BD LaPlace, LLC ("Bayou Steel") which operated a steel mill in LaPlace, Louisiana. Plaintiffs were illegally terminated on September 30, 2019 without the advance notice they were owed under the Worker Adjustment and Retraining Notification (WARN) Act which "requires certain employers to provide affected employees with 60-days' notice before a plant closure or mass layoff." *Id.* at 283 (citing 29 U.S.C. §2102(a)). Neither party disputes that Plaintiffs were illegally terminated. The issue is rather who could be

held responsible for this illegal termination: Bayou Steel, the employer, or Black Diamond, the company that owned the private equity fund that acquired Bayou Steel.

The WARN Act provides that non-employers may be held liable for illegal termination when that entity can be found to have "acted as a 'single employer' with the plaintiffs' employer." Fifth Circuit Opinion, at 284. The Department of Labor has provided factors to be considered in determining whether a related entity can be considered a single employer for purposes of WARN Act liability: (i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of the operations. 20 C.F.R. § 639.3(a)(2).

This Court previously granted summary judgment in favor of Black Diamond (Rec. Docs. 110, 122), finding that Plaintiffs had not created a genuine issue of material fact as to whether Black Diamond could be deemed legally responsible under the WARN Act for the illegal terminations. Plaintiffs then appealed this dismissal. The Fifth Circuit affirmed this Court's conclusions on every DOL factor except the de facto control factor.

The de facto control factor considers "whether the parent has specifically directed the allegedly illegal employment practice that forms the basis for the litigation." *Pearson v. Component Tech. Corp.*, 247 F. 3d 417, 503 (3d. Cir. 2001). Therefore, the ultimate, and only, issue before the Court is "who specifically directed the closing of the LaPlace mill without proper notice." Fifth Circuit Opinion, at 298.

Black Diamond, through its private equity limited partnership Opportunity Fund, IV LP, acquired Bayou Steel in April 2016. In addition to Black Diamond's funding, Bayou Steel also entered into a Senior Loan Agreement with Bank of America and SunTrust who provided revolving loans totaling $75 million and letters of credit totaling another $2.67 million. These loans were subject to a covenant requiring Bayou Steel to always have at least $10 million dollars in cash available to stave off default. After the acquisition and receipt of funding, Black Diamond installed three of its employees, Phil Rayorodetsky, Sam Farahnak, and James Hogarth[1], and three "independent directors," Robert Unfried, Terrence Taft, and Robert Archambault as the Directors of the Board of Bayou Steel.

Over the course of Black Diamond's ownership, Bayou Steel went through several periods of financial upheaval which put them in jeopardy of dipping below the $10 million dollar cash covenant. Black Diamond loaned Bayou Steel an additional $33 million dollars over time as part of a Subordinated Loan Agreement. This cash influx allowed Bayou Steel to remain operational and in compliance with its agreement with Bank of America and SunTrust. However, in July 2018, Bayou Steel suffered what would prove to be a catastrophic accident when molten steel burned through a critical piece of equipment in the manufacturing process. This "burn-through" destroyed a significant amount of electrical equipment and caused a domino effect that led to a series of operational setbacks. In the aftermath, Black Diamond

---

[1] Hogarth did not become a Bayou Steel Board Member until early 2019.

3

made a series of additional loans totaling $20 million to Bayou Steel to fund repairs and address other financial issues.

Despite this additional funding, Bayou Steel's financial condition was never able to fully recover. The Company began holding weekly triage meetings to determine which creditors they could afford to pay and in which order. The Company was losing up to $3 million a month and could no longer afford the raw materials it needed to operate. By August of 2019, the Company was again in danger of falling below the $10 million dollar cash covenant, and on August 29th, Bank of America informed Bayou Steel and Black Diamond that the Company was officially in default. Sam Farahnak, one of the Black Diamond members of Bayou Steel's board, continued to negotiate with Bank of America, attempting to stave off acceleration of the loan. He represented to the bank that Black Diamond would put up an additional $8 million dollars to support operations at the mill. The Senior Executives at Bayou Steel were also under the impression that additional Black Diamond money would be forthcoming. Black Diamond instead provided another $1 million dollar loan to Bayou Steel to put them back above the cash threshold.

After this loan, Steve Deckoff, founder and managing principal of Black Diamond, began to direct more personal attention to the plant. He and other Black Diamond employees paid several visits to the LaPlace facility, first on September 5th and later on September 18th and 19th, in order to assess the Company's performance. After the second visit, Deckoff concluded that continued funding of Bayou Steel would be a bad investment and stated in an email on September 22nd to John Fontana, a

4


Black Diamond employee, that he didn't want to put any additional money into the plant.

Without any loans or funding from Black Diamond, it became inevitable that the plant would face bankruptcy, a fact of which both Black Diamond and Bayou Steel seemed aware. Bayou Steel had been failing for months before Deckoff ever made the final decision to withhold further loans. The plant was losing $3 million a month, and Bayou Steel had already reached its credit limit with the steel scrap suppliers who provided the raw materials necessary to run the melt shop. In fact, on September 22, the very day Deckoff concluded that Black Diamond would not be lending any more money, the Bayou Steel board of directors met to discuss the financial situation facing the company. Despite a lack of minutes from this or any other board meeting, all agree that the Board unanimously voted to retain Polsinelli, PC as restructuring counsel and Candlewood Partners, LLC as its financial advisor to prepare for bankruptcy.

After this board meeting, Kristen Barney, Bayou Steel's HR Manager, began to work with Polsinelli to prepare WARN notices for the termination of the majority of Bayou Steel's employees. On September 25th, Barney circulated a draft of the WARN notices indicating that layoffs wouldn't occur until November 27th, 2019. This time frame would have been compliant with the 60-day notice required under the WARN Act. However, by September 27th, Barney circulated a new draft of the WARN notices showing that terminations would occur on Monday, September 30th. Also on September 27th, Bank of America and SunTrust informed Bayou Steel that they

would be accelerating their loans. A payment of the $41.2 million balance was due by September 30th. Needless to say, Bayou Steel could not make this payment when it lacked funds to purchase the raw materials needed to continue operating the plant. The board held another meeting on the afternoon of September 27th where Polsinelli and Candlewood communicated that bankruptcy was the only viable option. The Black Diamond board members abstained from any bankruptcy vote, which left the final, formal decision in the hands of the independent board members, Unfried, Taft, and Archambault. The independent directors did not formalize this decision at the September 27th board meeting. Instead, they refused to sign the bankruptcy resolution until they had the opportunity to consult their own outside counsel and until they could confirm that there was a Directors and Officers liability insurance policy in place. Although no formal bankruptcy resolution had been signed by the remaining board members, terminations of Bayou Steel employees began at 7:30 a.m. on Monday, September 30th. None of these employees were given the notice they were due under the WARN Act. Unfried, Taft, and Archambault signed the formal resolution approving the bankruptcy later that afternoon.

At the trial on this matter, Plaintiffs submitted evidence that Black Diamond was very involved in oversight of the operations at Bayou Steel. Such involvement in the business leading up to its closure is certainly *some* circumstantial evidence that Black Diamond may have ultimately ordered closure of the plant and termination of 300 employees. However, notably absent from the record in this case is any clear evidence of what actually occurred between the 25th and the 27th to change the

6

WARN Act notice drafts from providing the 60-days required notice to causing the terminations effective immediately on September 30th, without the required 60-day notices. There was no testimony from any of the witnesses as to who decided that the plant would be closed without the WARN notices required by law.

The only direct evidence before the Court about the decision to terminate the employees was the testimony of Robert Archambault, one of the three independent directors. When asked who made the decision to terminate the Bayou Steel employees, Archambault testified, "From what I recall, it was a recommendation from Candlewood, and the board approved the recommendation." Archambault Deposition, 128:24-129:1. However, when pressed about the specifics of this decision, Archambault stated he could not recall the timing or location of the decision. *Id.* at 186:17-18. No other director could recall whether this vote occurred.

Plaintiffs argue that this Court should hold Black Diamond liable based on Deckoff's decision to refuse additional loans for Bayou Steel, which made bankruptcy and plant closure inevitable. Yet, plaintiff's counsel admit that Black Diamond had no legal obligation to continue loaning additional monies to Bayou Steel. Instead, given the reality that the plant would be forced to close absent a cash infusion from Black Diamond—which had been provided in previous states of financial strife— counsel argue the decision not to provide additional funding is tantamount to a decision to close the plant. Transcript, 319:3-4; 308:6-20.

In *Pearson v. Component Tech. Corp.,* 247 F.3d 471 (3d. Cir. 2001), the company at the center of the litigation was forced to close when a lender refused to

invest any more money in a failing company. Also like in this case, the lender in *Pearson* was heavily involved in the operations of the business, including the hiring of the company's CEO, approval of all employee salaries in excess of $100,000 per year, receiving regular updates on the company's financial position, and drafting the proposal for the liquidation of the company. *Id.* at 480, 481. When applying the de facto control factor to this set of facts, the Third Circuit stated that this factor "is not intended to support liability based on a parent's exercise of control pursuant to the ordinary incidents of stock ownership. Nor may this factor be used to create liability for a lender's general oversight of its collateral." *Id.* at 503. The court recognized that the company was kept operational for three years solely as a result of the lender's own decision to fund the business and that the lender's decision to liquidate the company forced its closure without proper WARN Act notice. *Id.* at 504. However, the court found that the lender and company's close relationship was not enough to support WARN Act liability when the company was "contemplating closure and seeking legal advice as to its labor obligations" as well as repeatedly requesting financing from the lender. *Id.*

      Like in *Pearson*, the managers of Bayou Steel were well aware of its financial plight. Its board approved the hiring of Polsinelli and Candlewood to guide it through bankruptcy; its CEO cleared out his office three days before the plant's closure; its President and Chief Operating Officer Alton Davis knew that the Company could not survive without additional loans or funding from Black Diamond. "To be sure, the distinction between a decision to call a loan and a decision to shut down a company

8

is a fine one. . . large lenders—whether or not they are also parents—cannot help but be aware of the consequences of their decisions to foreclose and dispose of collateral." *Id.* at 504, 505.

As the Fifth Circuit stated, however, the ultimate issue before this Court is *"who specifically directed the closing of the [Bayou Steel] LaPlace mill without proper notice."* Based on the evidence submitted at trial, the Court finds that Black Diamond is not liable for closing the plant or terminating its employees without proper WARN Act notices merely for its decision refusing to make additional loans to Bayou Steel. The only reasonable inferences the Court draws from the evidence is that closing of the plant was inevitable without further loans, which neither Black Diamond nor the Senior Lenders were willing or required to provide. Once that became inevitable, the independent directors of Bayou Steel apparently made the ultimate decision to close the plant and immediately begin terminations, which caused the WARN Act violation to occur.

For these reasons, Plaintiffs' claims against BDCM (Black Diamond) are **DISMISSED with prejudice**.

New Orleans, Louisiana, this 15th day of April, 2024.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE